### In re MICHIE.

#### (District Court, D. Massachusetts. July 15, 1902.)

#### No. 1,470.

1. BANKRUPTCY—JURISDICTION—ADVERSE CLAIM.
   A court of bankruptcy has no jurisdiction over a controversy between the trustee and one to whom the bankrupt conveyed property, as to such property, where such person has possession, and makes a real, though fraudulent and voidable, adverse claim, and does not consent to the jurisdiction.

2. SAME—PLEADING.
   Petition of trustee in bankruptcy setting up a transfer to respondent by the bankrupt by way of preference and fraudulent conveyance shows a real adverse claim, excluding evidence that it was colorable.

3. SAME—CONSENT.
   Where petition of trustee in bankruptcy filed with the referee sets up a transfer to respondent by the bankrupt by way of preference and fraudulent conveyance, and prays the conveyance be declared void, and respondent ordered to deliver the property to petitioner, respondent, who files a paper in which he sets up that the court is without jurisdiction to grant the relief, and that the petition does not set forth sufficient facts, and also files an answer on the merits, denying that the conveyance was without consideration or was fraudulent, and who, after adverse finding by the referee, seeks a review by the judge, and there contends that the referee had no jurisdiction, does not consent to the jurisdiction.

In Bankruptcy.

F. Rockwood Hall, pro se.
Hurlburt, Jones & Cabot, for creditor.

LOWELL, District Judge. In this case the trustee filed a petition with the referee, alleging that one Cressey, a creditor of the

bankrupt to the amount of $5,100, had received conveyances from the bankrupt of property having a value greater than the debt; that Michie was insolvent at the time of the conveyances, which were without present or future consideration, and were made for the purpose of securing to Cressey the full payment of his claim, and of enabling him to obtain a greater percentage of his debt than other creditors of Michie of the same class, and were in fraud of the provisions of the bankrupt act, and were made for the further purpose of hindering, delaying, and defrauding Michie's creditors; that the most important conveyance was made within four months of the time when Michie signed the petition in bankruptcy and directed his attorney to file it; that the attorney, at Cressey's instance, delayed filing the petition until the four-months period had run. Wherefore the trustee prayed that the conveyances to Cressey be declared null and void, and that Cressey be ordered to deliver the property to the petitioner. This petition was improperly joined with a petition to reopen the estate, but the formal error in proceeding need not be further noticed. Upon this petition the referee issued an order of notice to Cressey. Cressey filed a general appearance on February 25, 1901. On February 27th he filed a paper, styled a "demurrer," in which he set up that the court was without jurisdiction to grant the relief prayed for, and that the petition did not set forth sufficient facts. On the same day he filed an answer on the merits, denying, among other matters, that the conveyances were without consideration, or were for the purpose of hindering, delaying, and defrauding creditors. The referee, after hearing, found that Cressey had received fraudulent payments and preferences to the amount of over $6,000, and ordered that the principal conveyance be declared fraudulent and void, and that Cressey surrender to the trustee the various articles fraudulently conveyed, or their value, together with interest to the date of the decree. Cressey thereupon sought a review by the judge, and here contended that the referee had no jurisdiction in the matter.

The jurisdiction of the court of bankruptcy under the present bankrupt act over controversies between the trustee and third parties is uncertain and ill-defined, and the decisions of the various circuit courts of appeals and district courts are in such conflict that it is well to confine the consideration of cases as far as possible to those decided by the supreme court. In Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, it was decided that under the present bankrupt act the district court is without that general jurisdiction over controversies between the trustee and a third person which had been exercised by the court of bankruptcy under preceding acts. Following that case, this court decided in Re Ward, 104 Fed. 985, that the court of bankruptcy was without any jurisdiction of controversies between the trustee and a third person, except where (1) the property was in the possession of the court of bankruptcy, or (2) the third person had consented to the jurisdiction. In Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, it was decided, however, that the referee, sitting as a court of bankruptcy, has jurisdiction to compel the delivery to the trustee of property belonging

to the bankrupt's estate in the hands of an agent of the bankrupt, or of one whose holding is not adverse to the bankrupt; i. e., in the hands of a person who had no "adverse claim" to the property in question when the petition in bankruptcy was filed. In that case the supreme court decided, furthermore, that the court of bankruptcy was not ousted of this jurisdiction by a claim formally adverse set up by a third person. "But suppose that respondent had asserted that he had the right to possession by reason of a claim adverse to the bankrupt, the bankruptcy court had the power to ascertain whether any basis for such claim actually existed at the time of the filing of the petition. The court would have been bound to enter upon that inquiry, and in doing so would have undoubtedly acted within its jurisdiction, while its conclusion might have been that an adverse claim, not merely colorable, but real, even though fraudulent and voidable, existed in fact, and so that it must decline to finally adjudicate on the merits. If it erred in its ruling either way, its action would be subject to review." 184 U. S. 15, 22 Sup. Ct. 269, 46 L. Ed. 405. It is true that the rule thus laid down differs from that which ordinarily governs cases of contested jurisdiction. Ordinarily speaking, the claim of a party to a suit is determined from his pleadings, and from his pleadings alone, while his rights are determined upon a consideration of his proofs as applied to his pleadings. In this particular case the supreme court held that, in order to determine if a third person has a "real, even though fraudulent and voidable," claim, and not a claim "merely colorable," the court should inquire as to the facts and consider proofs offered. For the purposes of jurisdiction over proceedings by the trustee to collect the bankrupt's property, the respondent's claim is not ascertained by an inspection of his pleadings, but by a hearing of his proofs. In the case at bar the referee entered upon a consideration of the proofs; but, whatever these may have shown, I do not think that they can be taken to establish that the respondent's "adverse claim" was "merely colorable," in a case where the trustee's petition itself set up a transfer to the respondent by the bankrupt by way of preference and by way of fraudulent conveyance. In either case the respondent's claim is adverse to that of the bankrupt. As between the bankrupt and the respondent, the bankrupt cannot avoid a preference. As between the bankrupt and the respondent, the bankrupt cannot avoid a fraudulent conveyance like that here alleged. Had the petition alleged that Cressey was a mere stakeholder, then, in spite of an answer setting up an "adverse claim," the referee might have taken evidence to determine if the "adverse claim" was "merely colorable"; but where the petition itself sets up an adverse claim evidence is excluded. It follows, therefore, that on the face of the petition, even without the support lent by the respondent's answer, the respondent had a claim "real, even though fraudulent and voidable," and that both the referee and the judge are without jurisdiction, except by the respondent's consent.

In Bardes v. Bank, 178 U. S. 524, 539, 20 Sup. Ct. 1000, 44 L. Ed. 1175, the supreme court answered the second question certified by the district judge as follows: "The district court of the United

States can, by the proposed defendants' consent, but not otherwise, entertain jurisdiction over suits brought by trustees in bankruptcy to set aside fraudulent transfers of money or property, made by the bankrupt to third parties before the institution of the proceedings in bankruptcy." Was that consent given in the case at bar? In Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. ——, Comingor, the general assignee of the bankrupt, was made a party to the original petition in bankruptcy,—an irregular proceeding, which yet finds its analogy in the case at bar, where the respondent was improperly made a party to a petition to reopen the estate. After adjudication, the referee entered an order requiring Comingor to show cause why he should not pay over to the receiver the amount placed by the bankrupt in his hands. Comingor responded that he was entitled to the money for services rendered and otherwise. The referee adjudged the response insufficient, and made the order absolute. Comingor then prayed for a review by the district court, and the district court sent the matter back to the referee, and thereafter Comingor pleaded that neither the judge nor the referee had jurisdiction. Upon this state of the pleadings the supreme court held that Comingor had not consented to the jurisdiction, and said:

"He was ruled to show cause, and the cause he showed defeated jurisdiction over the subject-matter; that is, jurisdiction to proceed summarily. He did not come in voluntarily, but in obedience to peremptory orders; and, although he participated in the proceedings before the referee, he had pleaded his claims in the outset, and he made his formal protest to the exercise of jurisdiction before the final order was entered." 184 U. S. 26, 22 Sup. Ct. 293, 46 L. Ed. ——.

The consent thus required by the supreme court appears to be more complete than that required by such cases as Railroad Co. v. McBride, 141 U. S. 127, 11 Sup. Ct. 982, 35 L. Ed. 659; but the language of the bankrupt act concerning jurisdiction by consent is peculiar, and the interpretation put upon it by the supreme court in the Comingor Case is authoritative. The consent to the jurisdiction given by Comingor was more explicit and extended than the consent given by the respondent in the case at bar, and this court is concluded by the decision of the supreme court unless the fact that the referee's order to show cause in the Comingor case was entered of his own motion, and not, as here, upon a petition by the trustee, was the ratio decidendi of that case. This does not appear to be a material difference, and this court must, therefore, hold that the referee was without jurisdiction,—First, because the respondent's claim was adverse, and, second, because, if adverse, the respondent has not here consented to the jurisdiction. By dismissing the petition for want of Comingor's consent to the jurisdiction, the supreme court in effect decided that Comingor's claim—that of a general assignee for expenses—was so far an "adverse claim" that the court of bankruptcy had no jurisdiction without his consent. If Comingor's claim was adverse, so, a fortiori, is that of Cressey. Powers, alleged to have been the attorney of the bankrupt, was joined with Cressey as defendant in the petition, but no relief was prayed as to him. Had this been done, and had any of the bankrupt's property been found

in his hands, perhaps he might have been required by summary petition to deliver it to the trustee, as he could hardly have set up an "adverse claim" thereto. Under the circumstances, however, the petition must be dismissed as to Powers as well as Cressey. It should be added that the Comingor Case was reported after the order here made by the referee. In the Comingor Case, as in Bardes v. Bank, there was discussion of the difference between a "summary proceeding" and a "plenary suit." Into that discussion it is not necessary to enter here, but it may be observed that the supreme court has lately shown itself disposed to follow the stricter practice of Smith v. Mason, 14 Wall. 419, 20 L. Ed. 748, and Marshall v. Knox, 16 Wall. 551, 21 L. Ed. 481, rather than the looser practice of Stickney v. Wilt, 23 Wall. 150, 23 L. Ed. 50, Milner v. Meek, 95 U. S. 252, 24 L. Ed. 444, and that referred to in White v. Ewing, 159 U. S. 36, 40, 15 Sup. Ct. 1018, 40 L. Ed. 67. See In re Steuer (D. C.) 104 Fed. 976, 978. It is greatly to be desired that the jurisdiction of the court of bankruptcy should be further defined by decisions of the supreme court, and, if the parties to this case desire to take the case there directly, this court will afford them every help in doing so.

Judgment of the referee reversed, and petition dismissed for want of jurisdiction.